```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
   JOHN P. STELLA,                                              MEMORANDUM & ORDER

                                                                02-CV-4940 (NGG) (LB)
                       Plaintiff,

         -against-

   JOHN E. POTTER, Postmaster General,
   United States Postal Service,



                       Defendant.
----------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.
```

Plaintiff John P. Stella ("Plaintiff" or "Stella"), proceeding pro se, brings this action against John E. Potter, Postmaster General of the United States Postal Service ("Defendant") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") and the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. This court initially dismissed Plaintiff's action pursuant to Rule 12(c) of the Federal Rules of Civil Procedure on the grounds that Plaintiff failed to timely exhaust his administrative remedies. Stella v. Potter ("Stella I"), No. 02-CV-4940 (NGG), slip op. (Docket Entry #23). By summary order, the Second Circuit vacated and remanded this court's opinion and instructed this court to decide under the summary judgment standard, with a full record, whether Plaintiff had in fact contacted an Equal Opportunity Office ("EEO") counselor within thirty days of the alleged discriminatory act, and if not, whether the time period in which he was required to do so should be tolled as a result of Plaintiff's mental illness. Stella v. Potter ("Stella II"), No. 04-1547-cv, 297 Fed. Appx. 43, 2008 WL 4682584, at *2 (2d Cir. Oct. 24, 2008) (summary order). Following the Second Circuit's

mandate, Defendant filed a Motion for Summary Judgment on December 22, 2008. (Docket Entry #34.) For the reasons that follow, Defendant's Motion is GRANTED.

**I.     CLAIMS**

Plaintiff filed this suit on August 30, 2002, alleging that he was subject to discrimination in violation of Title VII and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 11201 et seq. The court construes Plaintiff's ADA claim as a claim under the Rehabilitation Act.[1] Plaintiff's Complaint alleges that, during his prior employment with the Postal Service, a supervisor stated, "Him Italian Him Gangester [sic]" during a removal hearing. (Compl. Section 8 (Docket Entry #1).) The Complaint further alleges that, according to Plaintiff's "best recollection," the discriminatory act occurred in September 1990. (Id. at Section 5.) In a letter to the court dated November 7, 2003, Stella asserted that the alleged incident occurred on December 7, 1988. (Def. Ex. W.) The Complaint states that Plaintiff "[d]id initiate contact with EEO soon after, but became depressed. Treated at V.A. hospital for last 12 years for depression. Statement of racial slur is in minutes of hearing of removal action. Because of my depression and on medication, could not proceed with the EEO Contact." (Compl. Section 8.)

Defendant's Motion for Summary Judgment contends that: (1) Plaintiff failed to timely exhaust his administrative remedies under Title VII and the Rehabilitation Act; (2) Plaintiff failed to demonstrate entitlement to equitable tolling of a period spanning approximately twelve years; and (3) even if Plaintiff could overcome these significant hurdles, the substance of his alleged discrimination claim fails to warrant relief under Title VII. (Def. Mem. Supp. Summ. J. ("Def. Mem.") 1 (Docket Entry #34).)

---

[1] The ADA does not apply to alleged discrimination on the basis of disability in federal employment. See 42 U.S.C. § 12111(5)(b)(i) (exempting "the United States" from employers covered by the ADA); Rivera v. Heyman, 157 F.3d 101, 103 (2d Cir. 1998) (holding that "[a]s a federal employee, [plaintiff] has no remedy for employment discrimination under the ADA. . . . His sole claim for discrimination on the basis of disability is under the Rehabilitation Act, if anywhere.") (internal citation omitted).

## II. FACTUAL BACKGROUND

### A. Plaintiff's Failure to Comply with Local Civil Rule 56.1

As required by Local Civil Rule 56.2, Defendant provided notice to Plaintiff, a pro se non-moving party, that he may not rely on the allegations in his Complaint in opposing the Motion for Summary Judgment, and that he is required to respond to the Motion by filing sworn affidavits or other documentary evidence. (Def. Local Civ. R. 56.2 Notice to Pro Se Litigant dated Dec. 22, 2008 (Docket Entry #34).) Plaintiff did not submit a response to Defendant's Rule 56.1 Statement as required by Local Civil Rule 56.1(b); he submitted an unsworn letter that reiterates some of the allegations in the Complaint without any accompanying documentation. (Pl. Opp. dated Jan. 14, 2009 (Docket Entry #35).) It is clear that Plaintiff had actual notice of the requirements of Local Rule 56.1, because he specifically references the "Notice to Pro Se Litigants Opposing Summary Judgment" in his opposition. (Id. at 1.)

"A non-moving party's failure to adhere to Local Rule 56.1(b) can prove fatal because "[c]ourts in this circuit have not hesitated to deem admitted the facts in a movant's Local Rule 56.1 Statement that have not been controverted by a Local Rule 56.1 statement from the non-moving party.'" Witchard v. Montefiore Med. Ctr., No. 05-CV-5957 (JSR), 2009 WL 602884, at *7 (S.D.N.Y. Mar. 9, 2009) (quoting Gadsden v. Jones Lang LaSalle Am., Inc., 210 F. Supp. 2d 430, 438 (S.D.N.Y. 2002)); see also Millus v. D'Angelo, 224 F.3d 137, 138 (2d Cir. 2000) (finding summary judgment 'appropriate' in light of non-moving party's failure to comply with Local Rule 56.1(b)). Nevertheless, Local Rule 56.1 "does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are

otherwise unsupported by the record." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir. 2001); accord Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003).

Plaintiff has not submitted any admissible evidence in support of his allegations. His unsworn letter is inadmissible and thus not properly considered by the court. See, e.g., Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."); United States v. All Right, Title & Interest in Real Prop. & Appurtenances, 77 F.3d 648, 657-58 (2d Cir. 1996), cert. denied, 519 U.S. 816 (1996) ("The submission of [an] unsworn letter was an inappropriate response to the government's motion for summary judgment, and the factual assertions made in that letter were properly disregarded by the court."). The court has carefully reviewed the twenty-six exhibits cited in Defendant's 56.1 Statement and concludes that Defendant's evidence is undisputed.

**B.    Facts**

Plaintiff was employed by the United States Postal Service ("Postal Service") as a "laborer/custodian" in New York City from at least 1983 to 1991. (Def. 56.1 Statement ¶ 1 (Docket Entry #34).) In August 1985, he was notified that the Postal Service proposed removing him from employment based on charges of disrespecting and verbally threatening a supervisor on June 14, 1985, as well as three previous suspensions and letters of warning. (Id. ¶ 2.) Plaintiff was not ultimately removed from the Postal Service (id. ¶ 4), but he applied for early disability retirement, which was approved on January 25, 1991. (Postal Service Notice of Approval for Application for Disability Retirement (Def. Ex. D).)

**1.    Plaintiff's Requests for Reinstatement in 1999 and 2000**

In a letter dated May 14, 1999, the Postal Service responded to a request made by Plaintiff for reinstatement to the New York District. (Letter from Vincent Mangual to John P.

Stella dated May 14, 1999 (Def. Ex. E).) The letter informed Plaintiff that, based on his prior unsatisfactory employment history with the Postal Service, his request for reinstatement was rejected. (Id.) The Postal Service's letter listed two removal decisions, on August 21, 1990 and December 18, 1987, as well as three "notices of suspensions of 14 days or less," on April 4, 1990, August 10, 1987, and November 13, 1987. (Id.)

On June 18, 1999, Plaintiff completed and signed an "Information and Pre-Complaint Counseling Form" alleging that he was improperly denied reinstatement. (Declaration of William C. Contu ("Contu Decl.") ¶ 6 (Def. Ex. A).) This claim was assigned Case No. 1A-101-0120-099. (Id. ¶ 4.) On June 30, 1999, the Postal Service's Equal Employment Opportunity ("EEO") office offered Plaintiff informal administrative mediation of the claim, which Plaintiff initially accepted. (Id. ¶ 6). On September 4, 1999, Plaintiff rejected mediation. (Id. ¶ 6.) According to Postal Service records, Plaintiff took no further action on this claim. (Id.)

In a letter dated August 29, 2000, the Postal Service responded to another request by Plaintiff for reinstatement. (Letter from Estrella Alam to John P. Stella dated Aug. 29, 2000 (Def. Ex. F).) The letter informed Plaintiff, who had provided an address in Florida, that "the South Florida District receives more requests for reinstatement than can be reasonably accommodated. Competition is keen, and only those with better than average work records are given favorable decisions." (Id.) The letter further provided that "[d]ue to your prior work record, we have determined that you are unsuitable for reinstatement." (Id.)

## 2. Plaintiff's Contacts with the Postal Service in 2001-2002 Regarding His Allegations of Discrimination

On June 5 or 6, 2001, Plaintiff contacted the Postal Service's Office of EEO Compliance & Appeals, alleging that, when he was employed with the Postal Service, he had been discriminated against by a supervisor named Ernesto Marquez. (Contu Decl. ¶ 5; Letter from

5

Sandy Calo, Dispute Resolution Specialist, NYMA Office of EEO Compliance & Appeals, to John Stella dated Sept. 24, 2001 (Def. Ex. H) (indicating that Plaintiff contacted a counselor on June 5, 2001); Information for Pre-Complaint Counseling Form signed by John Stella on Dec. 12, 2001 (Def. Ex. L) (indicating that Plaintiff contacted a counselor on June 6, 2001).) According to USPS records, Plaintiff had alleged that Marquez used "racial slurs" against him, without specifying when the alleged incident occurred.[2] (Def. Ex. H.) This claim was assigned Case No. 1A-101-0029-01. (Contu Decl. ¶¶ 4-5.) Plaintiff submitted a letter to the Postal Service on June 14, 2001, asserting that he had been "very sick," "homeless," and "in a trance" since "the racial discrimination statement were said." (Letter from John Stella to Rosalind Moultry-Howard, Manager, EEO/Dispute Resolution dated June 14, 2001 (Def. Ex. G).)

In a letter dated September 24, 2001, Sandy Calo, a Dispute Resolution Specialist at the EEO office, informed Plaintiff that she had unsuccessfully tried to contact him for an initial interview at the phone number he provided. (Def. Ex. H.) The letter states that Stella's allegations had been discussed with Marquez, and that Marquez denied discriminating against Stella or using slurs against him. (Id.) The letter informed Plaintiff that he must file any formal administrative complaint within fifteen calendar days of his receipt of the letter. (Id.)

On or about October 19, 2001, Plaintiff wrote to Ms. Calo, requesting that the EEO decision be appealed because he was under the care of the Veterans' Hospital for treatment of depression, which made him "in no way able to function normally." (Letter from John Stella to Sandy Calo dated Oct. 19, 2002 (Def. Ex. J).) He asserted that the alleged remark was said "during a hearing for [his] removal," that he "got sick due to the stress" Marquez caused him,

---

[2] As noted above, Stella alleges in the Complaint that the incident occurred – according to his "best recollection" – in September 1990. (Compl. Section 5.) In a letter to the court dated November 7, 2003, Stella asserted that the alleged incident occurred on December 7, 1988. (Def. Ex. W.)

6

that he was "removed because of [Marquez's] lies," and that he was "depressed" and unable to work. (Id.) The letter does not specify when the alleged incident occurred. (Id.) The EEO treated this letter as Plaintiff's formal administrative complaint. (Contu Decl. ¶ 5 (giving October 20, 2001 as the filing date of the complaint); EEO Dismissal of Complaint (Def. Ex. M) (indicating that the complaint was filed on October 20, 2001).)

On October 23, 2001, Ms. Calo completed an EEO Dispute Resolution Specialist's Inquiry Report. (EEO Dispute Resolution Specialist's (DRS) Inquiry Report 1 (Def. Ex. I).) The report states that "counselee alleges that he was discriminated against based on mental disability when approximately 10 years ago, his supervisor Ernesto Marquez called him an Italian gangster." (Id.) It notes that "[c]ounselee is requesting to resolve the racial remark which caused him to leave the Post Office because of depression." (Id.) The report summarizes Ms. Calo's interview with Marquez, in which Marqez denied having made racial slurs against Stella. (Id. at 3.)

On December 10, 2001, Plaintiff again wrote to the EEO, seeking appeal of the EEO decision and stating that he had "proof" of the alleged discrimination. (Letter from John Stella to EEO dated Dec. 10, 2001 (Def. Ex. K).) Stella stated in the letter that he was "terminated because of my disability. Because of these racial slurs and threats of removal from the Post Office and lies about charges against me." (Id.) The letter also alleges the following: Stella went to the Veteran's Hospital on August 23, 1990, he was subsequently unable to work, and his supervisor at the Postal Service did not accept the hospital notes and sought Stella's removal. (Id.) Stella also stated in the letter that he "got very sick and depressed because of all the things the supervisors were doing" to remove him and that he wanted a "hearing or a trial" because he was discriminated against "because of my race and my disability." (Id.)

On or about December 12, 2001, Plaintiff filed an Information for Precomplaint Counseling form with the Postal Service EEOC, alleging "race, color, age, and mental depression." (Def. Ex. L.) He further alleged that Marquez used a racial slur at a removal hearing. (Id.)

In a decision dated December 14, 2001, the EEO dismissed Plaintiff's complaint. (EEO Dismissal of Complaint (Def. Ex. M).) The decision characterized the allegations as follows: "In your complaint you allege that you were discriminated against based upon your national origin (Italian) and disability (Mental) when (sometime prior to 1991) an acting supervisor allegedly made a racial slur during a hearing on a pending removal action." (Id.) It noted that the regulations required Stella to contact an EEO counselor within forty-five days of the alleged incident, and that Stella did not contact a counselor until June 5, 2001, "approximately 10 years beyond the 45-day time limit of the last event (1991)."[3] (Id.) The dismissal stated that Stella had indicated in his letters that he had depression since August 23, 1990 and as a result did not proceed earlier, but indicated to Stella that "your claim that you were unable to proceed in a reasonable amount of time is unsupported." (Id.) It thus dismissed the complaint as untimely under the Equal Employment Opportunity Commission's ("EEOC") regulations, 29 C.F.R. § 1614.107(a)(2).

On December 26, 2001, Plaintiff sent the EEO office another letter in which he stated that he was "put on pension from the Post Office due to fraud." (Letter from John Stella to EEO Sandy Calo dated December 21, 2001 (Def. Ex. N).) In a postscript, he reiterated his allegation that Marquez called him a "racial slur" and that he was put on medication as of August 23, 1990,

---

[3] The federal regulations were amended effective October 1, 1992 to extend the time limit for contacting an EEO counselor from thirty to forty-five days. See Briones v. Runyon, 101 F.3d 287, 290 & n.1 (2d Cir. 1996); 57 Fed. Reg. 12634-01, 1992 WL 70811 (Apr. 10, 1992) (final rule of the EEOC, effective Oct. 1, 1992, revising 29 C.F.R. § 1614.105(a)(1)). The Second Circuit's summary order notes that "[t]he applicable time period was thirty days at the time of the alleged discriminatory conduct in this case." Stella II, 4682584, at *2 n.2.

but added that "on October 12, 2001, I was diagnosed as fully recovered." (Id.) According to Plaintiff, "[a]ll the years from Aug 23 1990 to Oct 12 2001 I was unable to pursue my EEO case because of my condition." (Id.) In a second postscript, he stated that he contacted the EEO "years ago." (Id.)

Plaintiff appealed the Postal Service's decision to the United States Equal Employment Opportunity Commission's ("EEOC") Office of Federal Operations, which affirmed the Postal Service's dismissal of Stella's complaint as untimely. (EEOC Dismissal dated May 2, 2002 (Def. Ex. O).) The decision noted that "[o]n appeal, no persuasive arguments or evidence have been presented to warrant an extension of the time limit for initiating EEO contact." (Id.) Plaintiff sought reconsideration, which the EEOC denied. (EEOC Denial of Request for Reconsideration dated Aug. 6, 2002 (Def. Ex. P).) Plaintiff was informed of his right to file an action in federal court within ninety days of his receipt of the denial of reconsideration. (Id.)

### 3. Postal Service EEO Records Search

The Postal Service's Manager of EEO Compliance and Appeals for the region in which Plaintiff had been employed conducted a nationwide records search in search of any EEO cases filed by Plaintiff between December 7, 1988, the earliest date that Plaintiff asserted that the alleged incident occurred, and June 6, 2001, the approximate date when Plaintiff first contacted the EEO regarding the employment discrimination claim at issue here. (Contu Decl. ¶¶ 1, 3.) Other than the two claims described above – the one filed on or about June 18, 1999 and the one filed June 5 or 6, 2001 – Postal Service records indicate that there had been no contact between Plaintiff and EEO Offices, in any state, between December 7, 1988 and June 2001. (Id. ¶¶ 4-7.)

9

## III. STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact. See Fed. R. Civ. P. 56(c); D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998), cert. denied, 524 U.S. 911 (1998). The moving party has the burden of showing the absence of any genuine dispute as to a material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). In assessing the record to determine whether there is a genuine dispute as to a material fact, the court must resolve all ambiguities and draw all permissible factual inferences in favor of the non-movant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004); see also Anderson, 272 U.S. at 248 (holding that summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, however, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)) (emphasis in original). Evidence that is "merely colorable" or "not significantly probative" is insufficient to defeat summary judgment. Anderson, 477 U.S. at 249-50 (citations omitted). A moving party "may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223-34 (2d Cir. 1994).

## IV.     DISCUSSION

The Second Circuit's mandate instructed this court to consider, with a full record and under the summary judgment standard, whether Plaintiff had in fact contacted an EEO counselor within thirty days of the alleged discriminatory act, and if not, whether the time period in which he was required to do so should be tolled as a result of Plaintiff's mental illness.  Stella II, 2008 WL 4682584, at *2.  In its Motion for Summary Judgment, Defendant asserts that Plaintiff failed to timely exhaust his administrative remedies and has not demonstrated entitlement to equitable tolling.  (Def. Mem. 1.)  Defendant further argues that the substance of Plaintiff's alleged discrimination claim fails to warrant relief.  (Id.)

### A.     Exhaustion of Administrative Remedies

Prior to bringing suit under either Title VII or the Rehabilitation Act, "a federal government employee must timely exhaust the administrative remedies at his disposal." Belgrave v. Pena, 254 F.3d 384, 386 (2d Cir. 2001) (internal quotation marks and citation omitted) (Title VII); Boos v. Runyon, 201 F.3d 178, 181 (2d Cir. 2000) (Rehabilitation Act). The EEOC regulations at the time of the alleged incident required that an aggrieved agency employee initiate contact with a counselor at the agency's EEO office within thirty days of the alleged discriminatory act, with certain exceptions. See supra n.3 (discussing amendment to the regulations effective October 1, 1992); 29 C.F.R. § 1614.105(a)(1), (2); Belgrave, 254 F.3d at 386.  If the matter is not resolved after a mandatory counseling period, the employee must file a formal written administrative complaint with the EEO within fifteen days of receipt of the EEO counselor's notice of final interview and right to file a formal complaint.  29 C.F.R. § 1614.106(a), (b).

Having reviewed the entire record, the court finds no evidence that Plaintiff contacted an EEO counselor regarding this claim prior to June 5 or 6, 2001; this was more than twelve years after the alleged discriminatory action occurred, and more than ten years after Plaintiff retired from the Postal Service.[4] (Contu Decl. ¶ 5; Def. Exs. H, L.) Because there is no evidence that Plaintiff contacted an EEO counselor within thirty days of the alleged incident, the court concludes that Plaintiff failed to timely exhaust his administrative remedies.[5]

### B. Equitable Tolling

The timely exhaustion of administrative remedies is not a jurisdictional requirement; rather, like a statute of limitations, it is subject to equitable tolling. Boos, 201 F.3d at 182; Briones v. Runyon, 101 F.3d 287, 290 (2d Cir. 1996). The court thus considers whether equitable tolling is warranted.

The Second Circuit has recognized that mental illness can be a basis for tolling the administrative deadlines. Boos, 201 F.3d at 184. To determine whether equitable tolling is applicable, a district court must consider "whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." Zerilli-Edelglass v. N.Y. City Transit Auth., 333 F.3d 74, 80-81 (2d Cir. 2003) (internal quotation marks and citation omitted). Equitable tolling is "only appropriate" where "a party is

---

[4] In its summary order, the Second Circuit noted that "we cannot say that the District Court erred in finding that Stella did not timely exhaust his remedies," Stella II, 2008 WL 4682584, at *1 n.2, because the Pre-Complaint Counseling form regarding this claim – which Stella signed – indicates that Stella contacted an EEO counselor on June 6, 2001. (Def. Ex. L.)

Out of an abundance of caution, the court notes that Stella represented to a motions panel of the Second Circuit that he contacted the EEO "soon after" the alleged incident, and when asked at oral argument before the panel that issued the summary order whether "soon after" meant within thirty days, he responded in the affirmative. Id. In opposing Defendant's Motion for Summary Judgment, however, Plaintiff has offered no evidence indicating when he contacted the EEO counselor.

[5] Even assuming arguendo that Plaintiff did contact the EEO counselor within thirty days of the alleged incident, he was still obligated to proceed with the rest of the administrative process in a timely fashion. See 29 C.F.R. §§ 1614.105(a), 1614.106(b), 1614.107(a)(2); Boos, 201 F.2d at 181. There is no evidence in the record that Stella did anything regarding this claim until 2001. (Contu Decl. ¶¶ 4-5; Def. Exs. H, L.)

prevented in some extraordinary way from exercising his rights." Id. at 80 (internal quotation marks and citations omitted). The Second Circuit has held that "whether a person is sufficiently mentally disabled to justify tolling of a limitation period is, under the law of this Circuit, highly case specific." Boos, 201 F.3d at 184. The plaintiff has the burden of "demonstrating the appropriateness of equitable tolling." Id. at 185.

As the Second Circuit explained in Boos, in which the plaintiff alleged that she suffered from "paranoia, panic attacks, and depression," the plaintiff's "conclusory and vague claim, without a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights, is manifestly insufficient to justify any further inquiry into tolling." 201 F.3d at 185. Similarly, in Lloyd v. Bear Stearns & Co., Inc., No. 99-CV-3323 (GBD), 2004 WL 2848536, at *11 (S.D.N.Y. Dec. 9, 2004), the district court found that "[b]eyond her self-diagnosis of post-traumatic stress disorder and assertions that she was unable to 'afford . . . reliving [her] nightmare,' plaintiff presents no evidence that would allow a finding of exceptional circumstances," id. at *11. The court further noted that the plaintiff's statement that her psychologist and physician advised her not to go back to the same work environment was hearsay, and that "the record contains no medical treatment records, psychological evaluation records, or statements from medical professionals documenting plaintiff's mental impairment and later recovery at the time she filed her complaint." Id.

Here, Plaintiff has not offered any admissible evidence to substantiate his generalized statements that he was depressed and unable to work, let alone that mental illness prevented him from exercising his rights. (Def. Exs. G, J.) Plaintiff previously submitted an unsworn letter in opposition to Defendant's prior Motion to Dismiss stating, "I would have taken care of my EEO

13

better but because of my serious depression I was unable to" and that he was "lost in a trance." (Letter from John Stella to the court dated Oct. 14, 2003 (Def. Ex. U).) The unsworn letter that Plaintiff submitted in opposition to the pending Motion for Summary Judgment also asserts that Plaintiff was "depressed" and "unable to work" but does not describe how his condition prevented him from exercising his rights. (Pl. Opp. 2-4.) As noted above, these unsworn letters do not constitute admissible evidence in opposition to summary judgment. Even if they were admissible, however, they would be insufficient to demonstrate a genuine issue of material fact concerning the appropriateness of equitable tolling, given the other actions Plaintiff took during his period of alleged incapacitation to pursue his legal rights, discussed below.

Courts have found that plaintiffs' actions to pursue their legal rights during the period in which they claim incapacitation undermine claims that tolling is warranted. For example, in Columbo v. United States Postal Service, 293 F. Supp. 2d 219 (E.D.N.Y. 2003), the court found that the plaintiff failed to raise a genuine issue of material fact concerning the appropriateness of equitable tolling due to mental illness, "[g]iven these instances in which the plaintiff claimed to have affirmatively acted in pursuit of her right and her unsupported assertion that her mental illness rendered her incapable of making decisions," id. at 224. See also Victorial v. Burge, 477 F. Supp. 2d 652, 655 (S.D.N.Y. 2007) (denying equitable tolling of deadline for filing habeas petition where plaintiff performed other tasks in pursuit of his rights during the period of alleged incapacitation); Lloret v. Lockwood Green Eng'rs, Inc., No. 97-CV-5750 (SS), 1998 WL 142326, at *4 (S.D.N.Y. Mar. 27, 1998) (holding that plaintiff's alleged "deep depression" following termination from employment insufficient to warrant equitable tolling where "he was not so affected that he was unable to take care of his legal affairs, as evidenced by his filing of his bankruptcy claim").

Here, the undisputed evidence demonstrates that Plaintiff took other actions to pursue his rights during the period of his alleged incapacitation. While Plaintiff asserted in a letter to the EEOC in December 2001 that he was incapacitated from August 23, 1990 to October 12, 2001, he was capable of timely contacting an EEO counselor prior to June 5 or 6, 2001 (when he contacted the counselor regarding this claim), because he timely contacted an EEO counselor in June 1999 regarding his other EEO claim, the Postal Service's refusal to reinstate him in May 1999. (Contu Decl. ¶¶ 4, 6; Def. Ex. E.) In addition, Plaintiff applied for and received disability retirement during the period of his alleged incapacitation. (Def. Ex. D.) See Hedgepeth v. Runyon, No. 96-CV-1161 (SAS),1997 WL 759438, at *5 (S.D.N.Y. Dec. 10, 1997) (denying equitable tolling and noting that "the fact that Plaintiff sought disability retirement benefits in the intervening months between the date of discharge and the date of EEO notification belies any notion that Plaintiff was sufficiently incapacitated to warrant tolling."). Moreover, even if Plaintiff could substantiate his claim of incapacity due to mental illness beginning on August 23, 1990, he has provided no explanation or evidence as to why he failed to pursue his administrative remedies before that date, given his contention that the alleged incident occurred on December 7, 1988.

In sum, the court concludes that Plaintiff has failed to meet his burden of raising a genuine issue of material fact concerning the appropriateness of equitable tolling. Boos, 201 F.3d at 185. Plaintiff's claim is thus barred for failure to timely exhaust administrative remedies, and summary judgment is granted to Defendant.[6]

---

[6] Having granted summary judgment to Defendant, the court need not reach the merits of Plaintiff's discrimination claims under Title VII and the Rehabilitation Act. The court notes, however, that in any event, the single alleged epithet "him Italian, him gangster," would not warrant relief under Title VII. Only in "limited circumstances" does a single event implicate Title VII, and generally only if it is "extraordinarily severe." Mathirampuzha v. Potter, 548 F.3d 70, 78-79 (2d Cir. 2008) (citation omitted). Courts have routinely found a single offensive epithet insufficient to implicate Title VII. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) ("mere utterance of an . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED.

The Clerk of the Court is directed to close the case.

SO ORDERED.

/s/ Nicholas G. Garaufis<br>NICHOLAS G. GARAUFIS<br>United States District Judge

Dated: Brooklyn, New York
      March 23, 2009

---

implicate Title VII") (internal quotation marks and citation omitted); <u>Curtis v. Airborne Freight Corp.</u>, 87 F. Supp. 2d 234, 250 (S.D.N.Y. 2000) (holding that an "explicit and reprehensible racial slur . . . cannot – standing alone – constitute the steady barrage of opprobrious racial comments necessary to constitute a racially hostile workplace") (internal quotation marks and citation omitted). Nor has Plaintiff provided evidence that he was subject to discrimination on the basis of disability.